***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Holmes and the briefs and arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence or to amend the prior Opinion and Award. The Full Commission therefore affirms the Opinion and Award of the Deputy Commissioner with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. At the time of the alleged injuries which are the subject of this claim, the Parties were subject to and bound by the provisions of the North Carolina Workers' compensation Act.
2. At all times relevant to this claim, an Employer-Employee relationship existed between Plaintiff and Defendant-Employer.
3. Sedgwick Claims Services is the third-party administrator, and the carrier is American Protection Company.
4. Plaintiff's average weekly wage at the time of both of her injuries was $521.30, which yields a workers' compensation rate of $347.54.
5. All Industrial Commission forms filed with the Industrial Commission and Plaintiff's medical records are made a part of the official record in this case.
 ***********
Based upon the evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was 44 years old at the time of the hearing before the Deputy Commissioner. She is a high school graduate.
2. Plaintiff has been employed by U.S. Airways for 23 years. Throughout all of her employment with U.S. Airways, Ms. Minton has been a flight attendant.
3. Plaintiff's principal duties as a flight attendant are to provide for the safety and comfort of airline passengers, including serving them beverages and meals. The job requires flight attendants to move heavy items such as the emergency exit door of an airplane.
4. On December 12, 2002, while performing her job duties on a flight from Charlotte to Tampa, plaintiff tripped when a passenger leaned out into the aisle and pulled his bag in front of her into the aisle of the airplane. Ms. Minton tripped on the bag and fell, twisting her right knee and hitting it on the armrest of a passenger's seat. This interruption of her work routine resulted in a compensable injury under the North Carolina Workers Compensation Act.
5. Immediately following the fall, plaintiff began to feel pain in her right knee. After the fall, Ms. Minton was able to complete all of her required duties on that particular flight, but she continued to experience pain and soreness in the knee during the remainder of the trip.
6. Before her fall of December 12, 2002, Plaintiff had never experienced any significant injury to or problem with her right knee.
7. During the December 12, 2002 flight, Ms. Minton completed a U.S. Airways Passenger and Flight Attendant Injury\Illness\Incident Report. The report was turned in to U.S. Airways on or about that same day.
8. Since at the time of her injury Ms. Minton lived in Myrtle Beach, South Carolina, she returned home and sought treatment on December 17, 2002 from Walker Urgent and Family Care in Little River, South Carolina. Dr. Walker diagnosed a sprained right knee. He recommended decreased weight bearing, ice, use of a knee brace, and elevation of the knee. He also ordered x-rays of the knee.
9. Plaintiff's knee continued to feel sore in the days following her injury; however, Ms. Minton was also scheduled for a vacation of nearly one month following the end of the December 12, 2002 trip. During this vacation, Ms. Minton stayed off her knee and it began to feel better.
10. Plaintiff returned to her job as a flight attendant on January 9, 2003. She missed no time from work as a result of the December 12, 2002 injury.
11. On January 12, 2003, Ms. Minton sustained a second injury by accident during the course of her employment when she was securing a meal cart during a flight from Los Angeles to Charlotte. While she was pushing the meal cart to the area where she could secure it, her right foot went out from under her and out to her side after she unexpectedly stepped on something wet. This too was an unexpected interruption of the work routine that resulted in injury.
12. The slipping injury of January 12, 2003 caused plaintiff to experience immediate pain and swelling in her right knee. She was unable to continue in her duties at that moment due to knee pain, and she sat down on a jumpseat, rubbing her knee.
13. Plaintiff completed a U.S. Airways Passenger and Flight Attendant Injury\Illness\Incident Report during the flight. As soon as the plane landed in Charlotte, Ms. Minton called the offices of U.S. Airways to report that she needed medical attention for an injury to her right knee. She was referred by her employer to Dr. Roger Hershline, the company doctor. She turned in her injury report and spent the night in Charlotte in order to be seen by Dr. Hershline.
14. On January 13, 2003, Ms. Minton was examined by Dr. Hershline. Dr. Hershline found that the knee showed moderate swelling and pain. Dr. Hershline's diagnosis was right knee strain. He prescribed a cane for ambulation and recommended an MRI to rule out a meniscal tear. He removed Ms. Minton from work in any capacity until she could be seen again.
15. Ms. Minton was seen next by Dr. Hershline on January 22, 2003. Dr. Hershline noted that Ms. Minton was continuing to have swelling and pain in the medial and lateral aspects of the knee. Dr. Hershline recommended an x-ray of the foot and ankle, due to pain in those areas, and also recommended an orthopedic consult to review the MRI and x-rays.
16. Dr. Hershline stated his medical opinion that Ms. Minton's presenting symptoms were consistent with the described mechanism of injury. Based on this and other evidence the Full Commission finds as fact that the injuries which Dr. Hershline treated were a direct result of the two compensable accidents.
17. Both of Ms. Minton's claims of injury were denied by U.S. Airways and the airline denied Ms. Minton authorization to see Dr. Hershline again.
18. On January 16, 2003 Ms. Minton underwent an MRI of the right knee at Grand Strand Regional Medical Center. The impression was a possibility of a radial tear of the anterior horn of the lateral meniscus and suggestion of anterior joint/suprapatellar fluid.
19. On February 11, 2003, Ms. Minton was seen by Steven M. Callihan, M.D. of Strand Orthopaedic Consultants of Myrtle Beach, South Carolina. Dr. Callihan's impression was synovitis with the possibility of a meniscal tear. His plan was for conservative treatment. He placed Ms. Minton on sedentary duty and said that she was not to be on her feet more than four hours and not to lift anything heavier than ten pounds. Since Ms. Minton's job is not sedentary, she was unable to return to her duties as a flight attendant.
20. On March 10, 2003, Ms. Minton was seen by Dr. Patrick Curlee of Carolina Sports Medicine Joint Replacement Specialists in Wilmington, North Carolina. Plaintiff gave a history of her injuries to Dr. Curlee. Dr. Curlee's impression was a right knee injury sustained at work on December 12, 2002 with a re-injury on January 12, 2003. Dr. Curlee recommended a trial of physical therapy and stated that Ms. Minton should remain off work.
21. Plaintiff was seen again by Dr. Curlee on March 24, 2003. Following physical therapy, Ms. Minton had continued pain in the right knee globally. She had had some locking and catching, but denied any instability. She had intermittent swelling, and was taking ibuprofen daily. At that point, Ms. Minton wished to proceed with surgery and Dr. Curlee recommended that she be evaluated by his partner Dr. David Esposito, a knee specialist, and have the surgery by him.
22. Plaintiff was examined by Dr. Esposito on April 21, 2003. Dr. Esposito found that plaintiff had failed conservative therapy and continued to complain of pain in her right knee, especially with weight bearing activities. Dr. Esposito's impression was right knee injury sustained at work on December 12, 2002 with re-injury on January 12, 2003, with secondary lateral meniscus tear by MRI. Plaintiff's symptoms were consistent with medial meniscus tear and a possible incompetent ACL. Dr. Esposito recommended surgery.
23. On April 29, 2003 Ms. Minton underwent arthroscopic partial medial and lateral meniscectomies, arthroscopic anterior cruciate ligament repair, and chondroplasty of the medial femoral condyle and tibial condylar surfaces at Wilmington Surgicare, performed by Dr. Esposito.
24. The surgery performed by Dr. Esposito was beneficial to Ms. Minton and helped to reduce her pain; however, plaintiff has still continued to experience pain and swelling in the knee and difficulty ambulating since her injury of January 12, 2003.
25. Following the surgery, Dr. Esposito recommended physical therapy for Ms. Minton in an effort to further improve the condition of her right knee. However, by the time this recommendation was made, plaintiff had been out of work and had lost her health insurance, and was unable to afford the cost of physical therapy.
26. Ms. Minton has to date not been able to participate in the physical therapy ordered by Dr. Esposito, due to financial concerns. Plaintiff is anxious to undergo physical therapy in an effort to be able to return to her job as a flight attendant.
27. Ms. Minton most recently saw Dr. Esposito on or about Friday, May 21, 2004. Upon examination, Ms. Minton had inflammation and tenderness in the right knee and atrophy from deconditioning of the knee. Dr. Esposito's conclusion was that Ms. Minton was not any better. Dr. Esposito still recommends that Ms. Minton receive physical therapy.
28. Plaintiff has not reached maximum medical improvement.
29. Defendants argue that the Plaintiff lacks credibility because she had used all of her vacation and sick leave and her motive in filing these claims was so that she could stay at home with her two children. Plaintiff is estranged from her husband. To give credibility to this defense theory, one would have to believe that somehow plaintiff manufactured her injuries that ultimately required surgery or in the alternative plaintiff injured her knee outside of work and now after 23 years of service desires to not continue working. The Full Commission rejects this theory and finds plaintiff's testimony credible.
 *********** CONCLUSIONS OF LAW
1. Plaintiff experienced a compensable injury by accident to her right knee on December 12, 2002 when she tripped and fell over a passenger's bag while performing her duties as a flight attendant for U.S. Airways. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff experienced a compensable injury by accident to her right knee on January 12, 2003 when she slipped and her right leg went out from under her at an angle while performing her duties as a flight attendant for U.S. Airways. N.C. Gen. Stat. § 97-2(6).
3. The medical treatment performed by Drs. Callihan, Curlee, and Esposito was necessary to effect a cure, provide relief or lessen the period of disability. Ms. Minton is entitled to continuing medical treatment as a result of her work-related injuries of December 12, 2002 and January 12, 2003. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendants, subject to an approved attorney fee provided below, shall pay to Plaintiff $347.54 per week from January 13, 2003 and continuing until further order of the Commission or until plaintiff is unable to return to work. Of the accrued amount, defendants shall pay said amount to plaintiff in a lump sum. Defendants shall pay interest at the rate of 8 percent per year.
2. Defendants shall pay for all medical treatment incurred or to be incurred by plaintiff as a result of her injuries by accident as described above, for so long as said treatment effects a cure, gives relief, or tends to lessen plaintiff's period of disability.
3. Defendants shall pay to plaintiff's counsel 25% of the compensation otherwise due plaintiff in paragraph one of this Award. Of the accrued amount, defendants shall deduct 25% and send it directly to plaintiff's attorney. Of the continuing amount, the defendants shall send every fourth check to plaintiff's attorney.
4. Defendants shall pay the costs of this action, including an expert witness fee of $400.00 to Dr. David Esposito if not paid pursuant to prior order.
This 3rd day of January 2005.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER